ON PETITION FOR REHEARING

MeRAE, Justice,
for the court:
This Court grants the petition for rehearing and the original opinions are withdrawn and these opinions are substituted.
I.
A jury of the Jones County Circuit Court awarded Richard T. Bradley, an employee of MURCO Drilling Company, $10,000,000.00 for injuries he sustained as a result of the negligence of employees of Luther McGill, *13 Inc. The jury further found each party, Bradley and McGill, to be fifty percent con-tributorily negligent, reducing the judgment against McGill by $5,000,000.00. McGill raises nine issues on appeal; we address only two: the propriety of the circuit court’s denial of its motion for judgment notwithstanding the verdict and whether workers’ compensation was Bradley’s exclusive remedy. Finding no error, we affirm the jury verdict.
II.
Nineteen-year-old Richard T. Bradley was paralyzed from the chest down as a result of an oil field injury sustained on February 13, 1985. A “floor hand” for MURCO Drilling Company, Bradley fell from a disassembled derrick rig to which he and other employees of MURCO and Luther McGill, Inc. were attempting to attach a wind wall. McGill had been hired by MURCO to assist in moving and erecting drilling equipment at a well site owned by Tomlinson Interests, Inc.
The wind wall was intended to protect workers from the elements during drilling operations. It was designed to move with the wind. The wall, a twelve-foot square metal sheet which folds in the middle, was supported by “H” beams approximately eleven to twelve inches wide. Although there was evidence that it was standard for a wind wall to have a tail rope tied to it, the wind wall in question was not so equipped.
On the day of the accident, David Cook, assistant to the crane operator, attached a chain to the center of the wind wall while it was lying on the ground. The chain, in turn, was attached to a thirty-five-foot cable that ran to the boom of the crane. It was critical to maintain proper tension on the lines to keep the wall from moving or folding during installation. The wind wall would then be attached to the upper derrick beam some twenty-five feet above ground. The crane operator employed by Luther McGill lifted the wind wall by raising the boom of the crane. The wall dangled in the wind until it was pinned to the derrick beam. Once in position for attachment to the beam, however, the crane operator engaged the brakes and locked the crane in place. Cook remained on the ground to give further directions to the crane operator.
It was Bradley’s job, along with MURCO co-worker, Charles Cochran, to attach the wind wall to the derrick. Bradley and Cochran were working some twenty-five feet above the ground. The crane operator lowered the wind wall to a position where it could be attached to the H-beam, engaged the brakes and locked the crane in place. Bradley hammered his end of the wind wall in place on the derrick. Cochran, at the other end, was having difficulty pinning his end because he had no hammer. Seeing that Cochran needed assistance, Bradley ventured out on the H-beam, along the edge of the wind wall, to take his hammer to his coworker. Along the way, the wind wall leaned, causing Bradley to lose his balance and fall to the ground.
What caused the wind wall to move was contested at trial. McGill relies on the testimony of several eyewitnesses who testified that a gust of wind preceded Bradley’s fall. Bradley maintained that negligence on the part of the crane operator — either failure to keep the cables sufficiently taut or to keep a proper watch on the wind wall and his crane — was responsible. Bradley’s expert on crane operation testified that the crane operator must have “moved” at least one of the crane’s functions for the wind wall to lean over far enough to knock Bradley off the beam. He further testified that the crane operator should have watched the wind wall at all times. However, McGill’s crane operator admitted that he had not kept his eyes on the crane or the wall. As he testified, “I don’t know if I was holding it steady or not because, like I said earlier, I wasn’t watching it. I was talking to my swamper there on the ground.”
On January 20, 1989, Bradley filed a third party tort action against Luther McGill, Inc., in the Circuit Court of the Second Judicial District of Jones County. Liberty Mutual Insurance Company, MURCO’s workers’ compensation carrier, intervened, asserting its subrogation right.
A jury set Bradley’s damages at $10,000,-000, but found that he was fifty percent contributorily negligent. The circuit court accordingly entered a judgment against McGill in the amount of $5,000,000, plus costs *14 and interest. McGill’s post-trial motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, was denied.
III.
When reviewing the denial of a motion for a JNOV, this Court is bound to
consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992) (quoting Litton Systems, Inc. v. Enochs, 449 So.2d 1213, 1214 (Miss.1984)). A trial court judge should set aside a jury verdict only when it is apparent that the verdict is against the ovenvhelming weight of the evidence, and a trial court judge’s decision must stand unless there is a showing of an abuse of discretion. Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1177 (Miss.1990); Rester v. Lott, 566 So.2d 1266, 1268 (Miss.1990). We are reminded that the jury’s decision is afforded great deference because of the jury’s position to evaluate and weigh the evidence and the truthfulness of the witnesses’ testimony:
The demeanor or bearing of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine that portions of the testimony of any witness it will accept or reject.
Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d at 1177 (quoting Travelers Indemnity Co. v. Rawson, 222 So.2d 131, 134 (Miss.1969)).
McGill contends that the verdict was based on circumstantial evidence and reflects the sentiments of a jury overwhelmed by sympathy for the victim. It is not this Court’s role to assign blame or to speculate as to what might have been done to change the course of events now before us. However, looking, as we must, at the evidence in a light most favorable to Bradley, we find that there is ample evidence — as well as inferences that may be drawn therefrom — to support the jury’s verdict. Eyewitnesses report that there was a breeze at the time of the accident. Indeed, there was a meteorologist’s testimony that the wind could have been blowing at twelve to fourteen miles an hour at the site. However, expert testimony as well as a video of an experiment conducted by McGill indicated that the wall would not have been moved by winds of that velocity. Further expert testimony indicated that some movement by one of the crane’s functions — affecting the tautness of the lines securing the wind wall — would have caused the wall to lean to the extent that it did. Notably, none of the eyewitnesses were watching either the crane or the boom at the time of the accident, so none were aware of any movement by the equipment. Finally, the crane operator admitted in attentiveness, that at the time of the accident, he was talking to his “swamper” on the ground. Expert testimony indicated he should have been watching the wind wall at all times until it was securely pinned in order to avoid movement by the wall.
IV.
McGill filed a motion for summary judgment alleging that it was immune from suit because workers’ compensation was Bradley’s exclusive remedy. Finding that McGill was an independent contractor as a matter of law, the circuit court overruled the motion. We are of the opinion that W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38 (Miss.1992) controls in this case.
MURCO’s manager, Oscar Bradley, Jr., hired Luther McGill, Inc., which was engaged in the business of moving oil rigs, to assist the driller in moving and erecting the drilling equipment at the well site. MURCO employees told the McGill foreman what needed to be done; he, in turn, supervised the McGill employees. The superintendent *15 of MURCO had the authority to discharge McGill, but not to hire or fire any specific McGill employees. Thus, McGill was sufficiently outside of MURCO’s right to control to assume responsibility for the torts of its employees. Runyon, 605 So.2d at 45. See also Luther McGill, Inc. v. Clark, 244 Miss. 707, 146 So.2d 338 (1962); Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So.2d 858 (1961) (McGill found to be independent contractor under circumstances similar to the ease sub judice).
V.
As an appellate court, we do not assign blame or speculate as to what might have been done to change the circumstances of the cases before us. Some on this Court, if on the jury, may have rendered a different verdict; but we cannot say, based on the evidence and inferences that may be drawn therefrom, that this verdict must be overturned. Looking at the evidence in a light most favorable to Bradley, we find that the jury verdict is supported by the evidence in the record now before us. The circuit court properly denied McGill’s motion for a j.n.o.v. Further, since McGill was an independent contractor, the circuit court did not err in denying its motion for summary judgment on the workers’ compensation issue. Accordingly, we affirm judgment in the amount of $5,000,000.00 plus costs and interest.
JUDGMENT IS AFFIRMED.
DAN M. LEE, C.J., SULLIVAN, P.J., and PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., dissents with separate written opinion joined by PRATHER, P.J., and MILLS, J.